IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESSERA, INC., | No. C 12-692 CW |
| Plaintiff, | ORDER GRANTING TESSERA'S MOTION FOR LEAVE TO AMEND TO ASSERT CLAIMS AGAINST QUALCOMM CDMA TECHNOLOGIES ASIA PACIFIC PTE. LTD. |
| v. | |
| MOTOROLA, INC.; QUALCOMM, INC.; FREESCALE SEMICONDUCTOR, INC.; and ATI TECHNOLOGIES, ULC, | |
| Defendants. | |

Plaintiff Tessera, Inc. moves for leave to amend its complaint to add claims against Defendant Qualcomm, Inc.'s subsidiary, Qualcomm CDMA Technologies Asia Pacific Pte. Ltd. (QCTAP).[1]  Qualcomm opposes the motion.  The Court took the motion under submission on the papers.  Having considered the papers filed by Tessera and Qualcomm, the Court GRANTS the motion.

## LEGAL STANDARD

The case management order in this action provided that the deadline to add additional parties or claims was April 9, 2012.  Docket No. 114.  Under Rule 16(b), "[a] schedule shall not be modified except upon a showing of good cause and by leave of the

---

[1] Tessera also seeks to make certain other changes in its proposed amended complaint, namely: (1) to delete the allegations and claims against defendant Motorola, Inc., which have been dismissed with prejudice; (2) to delete the request for injunctive relief because the patents-in-suit have expired during the pendency of this litigation; and (3) to add allegations of activity in California and remove corresponding allegations about Texas because the case was transferred to this district from Texas.  No opposition has been raised to these proposed amendments.  Accordingly, Tessera is granted leave to make these changes.

district judge." Fed. R. Civ. Pro. 16(b). Where a schedule has been filed, a party's ability to amend the pleadings is "governed by Rule 16(b), not Rule 15(a)." Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992). Therefore, where, as here, a party seeks to amend a pleading after the date specified in a scheduling order, it must first show "good cause" for the amendment under Rule 16(b). Id.

In order to determine whether good cause exists, courts primarily consider the diligence of the party seeking the modification. Id. at 609; see also Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000). "[N]ot only must parties participate from the outset in creating a workable Rule 16 scheduling order but they must also diligently attempt to adhere to that schedule throughout the subsequent course of the litigation." Jackson v. Laureate, Inc., 186 F.R.D. 605, 607 (E.D. Cal. 1999).

If good cause is shown, the party must next demonstrate that the amendment is proper under Rule 15. Johnson, 975 F.2d at 608. Under that rule, courts consider five factors when assessing the merits of a motion for leave to amend: undue delay, bad faith, futility of amendment, prejudice to the opposing party and whether the plaintiff has previously amended the complaint. Ahlmeyer v. Nev. Sys. of Higher Educ., 555 F.3d 1051, 1055 n.3 (9th Cir. 2009).

## DISCUSSION

Qualcomm does not argue that it would be prejudiced by Tessera's proposed amendment, that Tessera is acting in bad faith, that the proposed amendment would be futile or that Tessera has

2

1  repeatedly failed to cure deficiencies in the complaint through
2  amendment.  Instead, Qualcomm contends that Tessera has delayed in
3  seeking to amend the complaint.

4      Tessera maintains that it was diligent in seeking to amend
5  the complaint.  It argues that it learned in February 2013 that,
6  contrary to Qualcomm's prior representations, "QCTAP was the
7  corporate entity directly responsible for accepting orders from
8  and sending invoices to several customers in the United States,"
9  and that it filed the instant motion on February 27, 2013.  Mot.
10 at 8-9.  Qualcomm argues that Tessera had prior notice of QCTAP
11 and its connection with LG International (America), Inc., a
12 customer in the United States, from documents disclosed in the
13 investigation initiated by the ITC in April 2007.  Opp. at 4.

14     Tessera explains that it first learned about QCTAP's role
15 interacting with United States customers, and resulting potential
16 liability, shortly before it filed the instant motion.  It states
17 that, in December 2012 and February 2013, Qualcomm had produced a
18 revised version of a sales spreadsheet that disclosed additional
19 information, including columns labeled "operating unit" and "bill
20 to" country.  Mot. at 3-4.  For many of the entries on the
21 spreadsheet, "QCTAP OU" appeared in the "operating unit" column
22 and "US" appeared in the "bill to" column.  Huang Decl., Ex. J.
23 When Tessera deposed Qualcomm's Rule 30(b)(6) witness in February
24 2013, she confirmed that the notation in the "operating unit"
25 column meant that "it's a QCTAP operating unit, therefore the
26 sales order was a QCTAP" and "the customer would have received an
27 invoice from QCTAP and paid QCTAP."  Huang Decl., Ex. N, 45:10-13.
28 Tessera contends that she also confirmed that QCTAP invoiced

3

several customers, including LG International (America), Inc. (LGIA), in the United States. Mot. at 4.

Qualcomm responds that Tessera "had previous notice of QCTAP" for two reasons. Opp. at 4. First, it argues that, in the ITC investigation, it had produced a service agreement between Qualcomm and Advanced Semiconductor Engineering, in which QCTAP is identified on a single page in an appendix as a "Ship To Location." However, as Tessera points out, this document does not disclose the role that QCTAP played in United States sales. Second, Qualcomm argues that it had produced documents in the ITC investigation that "identify QCTAP in the context of merchandise returns from customers." Opp. at 4. These documents, however, did not clearly identify QCTAP's role. In the cited exhibit, QCTAP appeared only in parentheses following an RMA number, and no context was provided that reasonably should have put Tessera on notice. This is particularly true in light of Qualcomm's representations that "QCTAP sells the Products it purchases . . . to third-party original equipment manufacturers . . . located solely outside of the United States." Huang Decl., Ex. P, 10.

Accordingly, the Court finds that Tessera has shown that it acted diligently in seeking to amend its complaint after it learned of QCTAP's role.

CONCLUSION

For the reasons set forth above, the Court GRANTS Tessera's motion for leave to amend the complaint. Tessera shall file its amended complaint within two days of the date of this Order and shall serve it forthwith. QCTAP may rest on Qualcomm's answer.

4

No motion to dismiss may be filed raising any argument on which the Court has already ruled.

IT IS SO ORDERED.

Dated: 8/7/2013

CLAUDIA WILKEN
United States District Judge